387 S.E.2d 556

**Katherine L. CROSS, Executrix of the Estate of Miriam Tate, Deceased,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**No. CC995.**

Supreme Court of Appeals of West Virginia.

Dec. 6, 1989.

Lane O. Austin, Sanders, Austin & Swope, Princeton, Richard G. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, for Katherine L. Cross, plaintiff.

Ben B. White, III, Princeton, for State Farm Mut. Auto. Ins. Co.

McHUGH, Justice:

This case is before this Court upon certified questions from the United States Court of Appeals for the Fourth Circuit, pursuant to *W.Va.Code*, 51–1A–1 to 51–1A–12 [1976], the Uniform Certification of Questions of Law Act.[1] The two questions involve the Dead Man's Statute, *W.Va. Code*, 57–3–1 [1937]. While we conclude that the Dead Man's Statute applies to the declaratory judgment action of the executrix against the insurer, we also conclude that the Dead Man's Statute does not bar the testimony in question.

## I

The plaintiff, Katherine L. Cross, the executrix of the estate of the decedent, Miriam Tate, brought a declaratory judgment action in the United States District Court for the Southern District of West Virginia against the insurer, State Farm Mutual Automobile Insurance Company, to construe the decedent's insurance contract with the insurer in order to ascertain the amount of uninsured motorist coverage. The decedent had been killed on June 26, 1986, in an automobile accident allegedly due to the negligence of a certain uninsured motorist driving another vehicle.

The decedent had executed an insurance form entitled "Acknowledgment of Coverage Selection and Rejection (West Virginia Uninsured and Underinsured Motorist Coverage)." The form stated that the insurer had offered to the decedent the opportunity to purchase uninsured motorist coverage up to the amount of $100,000 for bodily injury to one person, $300,000 for bodily injury to two or more persons per accident and $50,000 for property damage (or up to the decedent's liability coverage limits, whichever was greater). *See W.Va.Code*, 33–6–31(b) [1982, 1988].[2] The form also indicated that the decedent had elected to purchase uninsured motorist coverage with limits of $20,000 for bodily injury to one person, $40,000 for bodily injury to two or more persons per accident and $15,000 for property damage. The form did not con-

**1.** The order of certification is published in *Cross v. State Farm Mutual Automobile Insurance Co.*, 873 F.2d 75 (4th Cir.1989).

**2.** The relevant language of *W.Va.Code*, 33–6–31(b) [1982] was as follows:

(b) Nor shall any such [motor vehicle liability insurance] policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the Code of West Virginia, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums

which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident, unless the insured waives such coverage in writing[.] The minimum coverage limits under *W.Va. Code*, 17D–4–2 [1979], cross-referenced in *W.Va. Code*, 33–6–31(b), are $20,000 for bodily injury to one person, $40,000 for bodily injury to two or more persons per accident and $10,000 for property damage.

The events in this case occurred prior to the 1988 amendment to *W.Va.Code*, 33–6–31.

tain the respective premium costs for the various coverage levels which the decedent could have chosen. The decedent had also executed a second policy form of this nature, selecting the identical limits of coverage.

The plaintiff argued before the federal district court that the aforesaid form provided by the defendant insurer was insufficient as a matter of law to show a knowing and intelligent waiver of the decedent's statutory right to uninsured motorist coverage at $100,000/$300,000/$50,000 limits. The plaintiff relied upon *Bias v. Nationwide Mutual Insurance Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987).[3] Upon cross-motions for summary judgment the federal district court granted the plaintiff's motion for summary judgment and denied such motion of the defendant. The federal district court ruled that the written form was, under *Bias*, an insufficient waiver of the decedent's statutory right to the $100,000 coverage for bodily injury to one person (for each of the two policies), as argued by the plaintiff, because the form omitted cost information. The federal district court also ruled that the Dead Man's Statute, *W.Va. Code*, 57–3–1 [1937], precluded the insurer's agents from testifying that such cost information was orally given to the decedent. Thus, the coverage to be provided as a result of the decedent's death was held to be $100,000 for each of the two policies, instead of $20,000 for each of the two policies.

**3.** This Court in syllabus point 1 of *Bias* held: "Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." The offer must state, in definite, intelligible and specific terms, the nature of the coverage offered, the coverage limits and the *costs* involved. *Bias,* 179 W.Va. at 127, 365 S.E.2d at 791. If the insurer fails to carry its burden in this regard, the optional coverage, at the maximum limits stated in the statute, are included in the policy by operation of law. Syl. pt. 2, *id.*

*Bias* involved underinsured motorist coverage, which, like uninsured motorist coverage, is addressed by *W.Va.Code,* 33–6–31(b) [1982, 1988]. *Bias'* requirement that costs of optional coverage be stated in the offer to the insured is applicable to both uninsured and underinsured motorist coverage.

The defendant insurer timely appealed the federal district court's order to the United States Court of Appeals for the Fourth Circuit. That court certified these two questions to us:

(a) Does West Virginia Code § 57–3–1, commonly referred to as the Dead Man's Statute, have any application in the fact situation present here with respect to the admissibility of evidence?

(b) Does, if applicable, West Virginia Code § 57–3–1 render inadmissible the testimony of agents of State Farm Mutual Automobile Insurance Company concerning certain conversations between such agents and the deceased leading to the alleged waiver of the statutorily mandated uninsured motorist coverage under West Virginia Code § 33–6–31(b)?

## II

With respect to the first certified question, the insurer argues that the Dead Man's Statute, *W.Va.Code,* 57–3–1 [1937], is not applicable because the judgment in the declaratory judgment action would only nominally be for or against the decedent's executrix; the real parties in interest, the insurer argues, are the wrongful death distributees/insurance beneficiaries, not the executrix, and they in that capacity are not protected by the Dead Man's Statute. We disagree with the insurer's argument on this point.[4]

Neither *W.Va.Code,* 33–6–31(b) [1982, 1988], *see supra* note 2, nor *Bias* requires the respective costs of various levels of uninsured motorist coverage to be stated to the insured in *writing.*

**4.** *W.Va.Code,* 57–3–1 [1937] provides:

No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, *nor any person interested* in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic,

One of the requirements for applicability of *W. Va. Code*, 57-3-1 [1937] is that the testimony in question must be against certain persons in designated capacities. *Shuman v. Shuman*, 79 W.Va. 445, 448, 91 S.E. 264, 265 (1917); *Board of Education v. Harvey*, 70 W.Va. 480, 481-82, 74 S.E. 507, 508 (1912). For example, "the testimony must be against the deceased's personal representative[.]" Syl. pt. 10, in part, *Moore v. Goode*, 180 W.Va. 78, 375 S.E.2d 549 (1988). *Accord*, syl. pt. 2, *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989). The term "against," as used in the Dead Man's Statute, means that the witness and the representative of the deceased or insane person or lunatic have "opposing interests in the suit[.]" Syl. pt. 12, in part, *Seabright v. Seabright*, 28 W.Va. 412, 10 S.E. 265 (1886). It has been specifically held, therefore, that "[a] witness interested adversely to the administrator, in the result of the action for damages for wrongful death, is incompetent to testify against the latter, in regard to a personal communication between himself and the person alleged to have been wrongfully killed." Syl. pt. 5, *Lawrence's Adm'r. v. Hyde*, 77 W.Va. 639, 88 S.E. 45 (1916). The West Virginia Dead Man's Statute is not limited in application to cases in which there may be a judgment for or against the *estate* of

the decedent, as are the Dead Man's statutes in some other jurisdictions. *Id.* 77 W.Va. at 644, 88 S.E. at 47.[5]

In the declaratory judgment action here the executrix is the plaintiff. The executrix is no more a nominal party in the declaratory judgment action than she is in the wrongful death action, for purposes of the Dead Man's Statute. *See supra* note 5. Accordingly, the testimony of a witness which is adverse to the interests of insurance beneficiaries in a declaratory judgment action brought on their behalf by the personal representative of the deceased insured against the insurer is testimony which is "against the executor [or] administrator," within the meaning of the Dead Man's Statute, *W. Va. Code*, 57-3-1 [1937].

The first certified question is answered in the affirmative.

### III

With respect to the second certified question, *see supra* section I (last paragraph), the answer turns on whether an agent of a party, including an agent of a corporate party who is not a shareholder, is, by virtue of the agency, a "person interested" under the Dead Man's Statute. Based upon the authorities cited below, this Court holds that a witness' status as an

---

*against the executor*, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf, nor as to which the testimony of such deceased person or lunatic shall be given in evidence: Provided, however, that where an action is brought for causing the death of any person by any wrongful act, neglect or default under article seven, chapter fifty-five of this Code, the person sued, or the servant, agent or employee of any firm or corporation sued, shall have the right to give evidence in any case in which he or it is sued, but he may not give evidence of any conversation with the deceased.
(emphasis added)

**5.** Other wrongful death cases involving the Dead Man's Statute include *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989); *Willhide v.*

*Biggs*, 118 W.Va. 160, 188 S.E. 876 (1936), *modified by statute on another point as stated in* syl. pt. 4, *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989); *Strode v. Dyer*, 115 W.Va. 733, 177 S.E. 878 (1934), *modified by statute on another point as stated in* syl. pt. 4, *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989). Under *W. Va. Code*, 55-7-6 [1985, 1989], a wrongful death action must be brought by and in the name of the personal representative of the decedent on behalf of certain persons related to the decedent, not on behalf of the estate. Nevertheless, the Dead Man's Statute, *see supra* note 4, does not require the testimony to be against the estate, but only against the executor, administrator, heir at law, next of kin, etc. Accordingly, in *Wimer v. Hinkle* we noted that there was no disagreement that the witness' testimony "would be against the interest of the deceased's personal representative, the plaintiff." 180 W.Va. at 664, 379 S.E.2d at 387.

While the declaratory judgment action to determine the amount of insurance coverage is related to the wrongful death action, it is not a wrongful death action.

agent of a party, without more, does not make him or her a "person interested," within the meaning of *W.Va.Code,* 57–3–1 [1937], and his or her testimony is not on that basis precluded by that statute.

At the outset we note that the Dead Man's Statute is still valid under the language of Rule 601 of the *West Virginia Rules of Evidence,* entitled "General Rule of Competency": "Every person is competent to be a witness except as otherwise provided for by statute or these rules." In his reporter's notes to the *West Virginia Rules of Evidence,* Professor Cleckley states: "WVRE 601 is consistent with prior West Virginia law in that it still requires the exclusion of testimony based on grounds covered by the West Virginia Dead Man's Act. *W.Va.Code,* § 57–3–1."

In syllabus point 9 of *Moore v. Goode,* 180 W.Va. 78, 375 S.E.2d 549 (1988), this Court recognized that *W.Va.Code,* 57–3–1 [1937], *see supra* note 4, which commences with a broad testimonial grant, "was designed to alleviate the harsh common[-]law rule that foreclosed any witness from testifying [in *any* civil case] if he [or she] had [a disqualifying] interest in the suit." In *Moore v. Goode,* we emphasized the *limited* nature of the exception to competency provided by this statute; testimony is barred by the Dead Man's Statute only if there is a concurrence of three conditions:

(1) A witness' testimony is excluded if it relates to a personal transaction or communication with the deceased, insane or lunatic person, and

(2) The witness is either a party to the suit or a person interested in its event or is a person through or under whom such party or interested person derives any interest or title by assignment, and

(3) The testimony offered must be against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such [deceased] person or the assignee or committee of such insane person or lunatic.

180 W.Va. at 90, 375 S.E.2d at 561 (footnotes omitted).

The second certified question in the present case involves the second condition stated above. A witness who is not a party to a civil action, or who has no interest in that action, is not precluded by *W.Va.Code,* 57–3–1 [1937] from testifying with regard to a personal transaction or communication between such witness and a decedent. Syl. pt. 5, *Transamerica Occidental Life Insurance Co. v. Burke,* 179 W.Va. 331, 368 S.E.2d 301 (1988); syl. pt. 1, *Papenhaus v. Combs,* 170 W.Va. 211, 292 S.E.2d 621 (1982) (attorney-agent of decedent may ordinarily testify). Our summary of the test for determining whether a witness is a "person interested" under the Dead Man's Statute is set forth in syllabus point 3 of *Wimer v. Hinkle,* 180 W.Va. 660, 379 S.E.2d 383 (1989):

The test as to whether a witness is an interested [person] within the meaning of W.Va.Code, 57–3–1, is not whether he or she may be interested in the question in issue, or may entertain wishes on the subject, or may even have occasion to test the same question in a future suit, but whether the proceeding can be used for evidence in some pending or future suit. Such person must have an interest to be affected by the result of the suit or by the force of the adjudication. This was the common[-]law rule, which still prevails in this state.

Moreover, to exclude a witness' testimony under this statute because of "interest," that interest must be one which is present, certain and vested, not remote, uncertain or contingent. *Lilly v. Ellison,* 107 W.Va. 402, 405–06, 148 S.E. 380, 381 (1929). *Accord, Moore v. Goode,* 180 W.Va. 78, 90 n. 19, 375 S.E.2d 549, 561 n. 19 (1988).

The exception to competency provided by the Dead Man's Statute is to be strictly construed so that the testimony in question is admissible unless clearly excluded. Syl. pt. 1, *Keller v. Hartman,* 175 W.Va. 418, 333 S.E.2d 89 (1985); syl. pt. 5, *Sayre v. Whetherholt,* 88 W.Va. 542, 107 S.E. 293 (1921).[6]

---

**6.** The rationale for the Dead Man's statutes in     the various states is that a survivor's lips should

■ Based upon this principle of strict construction of the exclusionary aspect of *W.Va.Code*, 57–3–1 [1937], this Court has held that an agent as such is not expressly included in the statute as an interested person, and that, therefore, "[a]n agent contracting in behalf of his principal with a person since deceased is a competent witness in behalf of his principal against [the personal representative of] the estate of the deceased party to prove the transaction." Syl. pt. 2, *Brown v. Click*, 59 W.Va. 172, 53 S.E. 16 (1906), and 59 W.Va. at 174, 53 S.E. at 17. Likewise, the testimony of a corporate agent who is not a shareholder is not barred by the Dead Man's Statute, solely on account of his or her interests as an agent. Syl. pt. 2, *Stansbury v. Bright*, 109 W.Va. 651, 156 S.E. 62 (1930), and 109 W.Va. at 652, 156 S.E. at 62–63.

■ Similarly, an insurer's agent is not precluded, at common law or by most Dead Man's statutes, from testifying to a conversation or transaction with the now deceased insured on behalf of the insurer, solely because of his or her interest as an agent in seeing the principal's cause advanced; and the agent is a competent witness even if the agent is interested in the insurance contract to the extent of his or her commissions. *Laing v. State Farm Fire & Casualty Co.*, 236 N.W.2d 317, 319–20 (Iowa 1975); *Mutual Life Insurance Co. v. Oliver*, 95 Va. 445, 450, 28 S.E. 594, 596 (1897).[7] Furthermore, the fact that a corporation can only speak through its agents is not a sufficient reason to create judicially an exception to competency not expressly provided by a Dead Man's statute, the exclusionary aspect of which is strictly construed. *See, e.g., Williams v. Safeco Ins. Co. of America*, 34 Ohio St.2d 237, 239, 240, 298 N.E.2d 135, 136, 137 (1973); *Mutual Life Insurance Co. v. Oliver*, 95 Va. 445, 449, 28 S.E. 594, 596 (1897). In essence, an insurance agent's interests as an agent are too remote to render his or her testimony inadmissible.[8]

be sealed because the lips of the decedent are sealed. In such circumstances the decedent is unable to confront the survivor, give his or her version of the transaction or communication and expose the possible omissions, mistakes or even outright falsehoods of the survivor. The Dead Man's statutes are thus premised upon the idea that there is a very strong temptation to lie or to conceal material facts to the detriment of the decedent's representative(s). F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 2.2(D)(1), at 40–41 (2d ed. 1986). *See also Moore v. Goode*, 180 W.Va. 78, 89, 375 S.E.2d 549, 560 (1988); *Miami Coal Co. v. Hudson*, 175 W.Va. 153, 158–159, 332 S.E.2d 114, 119 (1985).

The rationale for the exclusionary aspect of the Dead Man's statutes has been uniformly criticized. It assumes perjury and jury gullibility. According to the commentators, weight, not admissibility, should be the real concern. *See, e.g.,* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 2.2(D)(1), at 41, 44 (2d ed. 1986); *McCormick on Evidence* § 65 (E. Cleary 3d ed. 1984); 2 J. Wigmore, *Evidence in Trials at Common Law* § 578 (J. Chadbourn rev.1979).

7. In the present case the insurance agents would testify that the now deceased insured elected to purchase less than the maximum uninsured motorist coverage in lieu of the maximum coverage. Such testimony would be adverse to the agents' interest in commissions.

8. Other cases holding that an insurance agent's testimony ordinarily is not barred by the Dead Man's statute include the following: *Allstate Insurance Co. v. Doody*, 193 So.2d 687, 688–89 (Fla.Dist.Ct.App.1967); *Williams v. Empire Mutual Annuity & Life Insurance Co.*, 8 Ga.App. 303, 309–10, 68 S.E. 1082, 1085 (1910); *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.*, 61 Ill.App.2d 119, 124–25, 208 N.E.2d 900, 903–04 (1965); syl. pt. 2, *Taylor v. American Home Life Insurance Co.*, 137 Kan. 862, 22 P.2d 459 (1933); *National General Insurance Co. v. American Standard Insurance Co.*, 311 Minn. 415, 421–22, 249 N.W.2d 453, 457–58 (1977); *Boehne v. Guardian Life Insurance Co. of America*, 224 Minn. 57, 74, 28 N.W.2d 54, 63–64 (1947); *Darby v. Northwestern Mutual Life Insurance Co.*, 293 Mo. 1, 14–15, 239 S.W. 68, 72–73 (1922); *In re Will of Lapp*, 3 A.D.2d 55, 57, 158 N.Y.S.2d 215, 218 (1956), *aff'd mem. on other grounds*, 3 N.Y.2d 735, 143 N.E.2d 519, 163 N.Y.S.2d 972 (1957); *Bonacci v. Prudential Insurance Co. of America*, 242 A.D. 475, 475–76, 276 N.Y.S. 27, 28 (1934); *King v. National Union Fire Insurance Co.*, 258 N.C. 432, 436, 128 S.E.2d 849, 853 (1963); *Eaton v. New York Life Insurance Co.*, 315 Pa. 68, 79–80, 172 A. 121, 126 (1934); *Scholz v. Standard Accident Insurance Co.*, 145 Va. 694, 708, 134 S.E. 728, 732 (1926); *Deacy v. College Life Insurance Co. of America*, 25 Wash.App. 419, 421, 607 P.2d 1239, 1241 (1980); *Nolan v. Standard Fire Insurance Co.*, 243 Wis. 30, 35–36, 9 N.W.2d 74, 76, 77 (1943). *See also* 21 J. Appleman & J. Appleman, *Insurance Law and Practice* § 12331, at 407–08 (rev.1980); 19 G. Couch, *Couch['s] Cyclopedia of Insurance Law* § 79:95 (2d ed. rev.1983); 3 S. Gard, *Jones on*

On the other hand, the weight or credibility of the agent's testimony is for the trier of the facts to determine. *Laing v. State Farm Fire & Casualty Co.*, 236 N.W.2d 317, 320 (Iowa 1975); *Eaton v. New York Life Insurance Co.*, 315 Pa. 68, 79–80, 172 A. 121, 126 (1934). *See Lilly v. Ellison*, 107 W.Va. 402, 405, 148 S.E. 380, 381 (1929) (partner/son-in-law of plaintiff is not a "person interested," so permitted to testify against decedent's administrator; weight for jury).

The executrix here argues that the 1937 amendment (the last amendment) to *W.Va. Code*, 57–3–1, adding the present proviso concerning wrongful death actions, *see supra* note 4, *implies* now that agents of a corporate party, other than agents of a corporate defendant in a wrongful death action, may not testify against a decedent's personal representative as to personal transactions or communications with the now deceased person. We disagree. The purpose of that amendment to the Dead Man's Statute was not to alter the common-law rule allowing corporate agents' testimony in general, *see, e.g., Stansbury v. Bright*, 109 W.Va. 651, 156 S.E. 62 (1930), discussed above. Instead, the purpose of the 1937 amendment to the Dead Man's Statute was to override *Willhide v. Biggs*, 118 W.Va. 160, 188 S.E. 876 (1936), and *Strode v. Dyer*, 115 W.Va. 733, 177 S.E. 878 (1934), in which this Court had held to be inadmissible, under the "personal transaction" language of the Dead Man's Statute, testimony as to vehicular movements in a wrongful death action. We recognized this purpose in syllabus point 4 of *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989):

> The clear import of the 1937 amendment to W.Va.Code, 57–3–1, is to allow testimony by a defendant or the defendant's servant or employee relating to

facts surrounding the wrongful death claim, except 'evidence of any conversations with the deceased.' This provision has altered the cases of *Strode v. Dyer*, 115 W.Va. 733, 177 S.E. 878 (1934), and *Willhide v. Biggs*, 118 W.Va. 160, 188 S.E. 876 (1936).

In this regard it must be remembered that the primary purpose of the various states' Dead Man's statutes is to enlarge, not to restrict, the competency of witnesses; if a witness was competent at common law, he or she is also competent under the Dead Man's statutes, unless expressly stated otherwise. *Allstate Insurance Co. v. Doody*, 193 So.2d 687, 689 (Fla. Dist.Ct. App.1967) (insurer's agent). *See also Laing v. State Farm Fire & Casualty Co.*, 236 N.W.2d 317, 319 (Iowa 1975) (insurer's agent) (incompetency not to be enlarged by construction).

 In view of the foregoing, this Court holds that the Dead Man's Statute, *W.Va. Code*, 57–3–1 [1937], does not bar the testimony of an insurer's agents that they orally informed the decedent of the costs of various levels of uninsured motorist coverage, where the only assertion is that the insurer's agents are incompetent witnesses by virtue of their interests as agents.[9]

The second certified question is answered in the negative.

Having answered the certified questions, we dismiss this case from our docket.

Certified questions answered; case dismissed.

---

*Evidence: Civil and Criminal* §§ 20:34, 20:35 (6th ed. 1972 & Supp.1989).

In contrast, the Indiana and Michigan Dead Man's statutes, for example, explicitly bar the testimony of an agent who acted in the making or continuing of a contract with a now deceased person. *See, e.g., State Farm Life Insurance Co. v. Fort Wayne National Bank*, 474 N.E.2d 524, 527 (Ind.Ct.App.1985); *Rogers v. Detroit Auto-*

*mobile Inter–Insurance Exchange*, 275 Mich. 374, 382, 266 N.W. 386, 389 (1936).

**9.** The legislature could eliminate any potential for false testimony by the insurer's agents by requiring cost information for various levels of uninsured motorist coverage to be in a written form, the receipt and comprehension of which is acknowledged in writing by the insured.